AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Jose Javier MERCADO<br><br>_Defendant(s)_ | Case No. 6:26-mj- 1266 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 24, 2026__ in the county of __Brevard__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 113(a)(8) | Assault within maritime and territorial jurisdiction |

This criminal complaint is based on these facts:

See affidavit.

☑ Continued on the attached sheet.

Sworn to before me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 41(d).

_Complainant's signature_

Jacob Hamilton, FBI Special Agent
_Printed name and title_

Date: 2/26/26

City and state: Orlando, FL

_Judge's signature_

Hon. Leslie Hoffman Price, U.S. Magistrate Judge
_Printed name and title_

STATE OF FLORIDA                                    CASE NO.: 6:26-mj-1266

COUNTY OF BREVARD

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jacob Hamilton, being first duly sworn, hereby depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed by the FBI for approximately six years. I am assigned to the FBI's Joint Terrorism Task Force, where, among other violations, I have investigated various threat-related matters, including school shooting threats and interstate threatening communications. During the course of my law enforcement experience, I have participated in numerous complex investigations involving violent crimes such as domestic terrorism, international terrorism, online threats, and other crimes against persons. As an FBI Special Agent, I am an "investigator or law enforcement officer" of the United States within the meaning of 18 U.S.C.§ 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516(1).

2. I have been trained in obtaining probable cause, surveillance techniques, the interviewing of subjects and witnesses, and the planning and execution of arrest, search, and seizure warrants. I have also received training on criminal violations at various conferences and venues.

3. I submit this affidavit in support of a criminal complaint charging Jose Javier MERCADO with assault within maritime and territorial jurisdiction, specifically assault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate, in violation of 18 U.S.C. § 113(a)(8).

4. This affidavit is based upon my personal knowledge, training, and experience as a law enforcement officer, and information that I received from other law enforcement officers and witnesses involved in this investigation. This affidavit is not intended to be a complete and detailed description of all the facts and evidence discovered during this investigation. I have set forth only the information I believe necessary to establish probable cause that a violation of federal law has been committed.

## PROBABLE CAUSE

5. On February 25, 2026, the Brevard County Sherriff's Office ("BCSO") contacted the FBI concerning an incident of domestic violence that MERCADO had committed against his spouse, A.R., on board the Royal Caribbean Odyssey of the Seas cruise ship. A.R. has been married to MERCADO for approximately 18 months. A.R. and MERCADO were traveling on the cruise together and staying in the same guest stateroom.

6. At the time of this domestic violence incident, the Odyssey of the Seas was in international waters, approximately 52 miles from the closest point of land, inbound to Port Canaveral, Florida from New York City, New York.

2

7. More specifically, on February 24, 2026, at approximately 5:00 p.m., Royal Caribbean security was alerted by a crew member that he observed A.R. crying in the corridor. A.R. advised the crew member that her husband (MERCADO) had slapped and choked her.

8. Security responded, and A.R. advised that while she was on the phone with her parents, MERCADO became angry and started cursing. A.R. asked MERCADO to stop cursing, after which MERCADO became aggressive, choked A.R. while holding her to the floor, and bit A.R. on the left cheek.

9. While being evaluated at the medical facility, A.R. stated MERCADO also kicked her twice, once in the lower stomach and once in the lower back, and that MERCADO hit her head.

10. MERCADO was interviewed in their stateroom by cruise security officers, and he stated that he paid for the entire cruise and that A.R. had been complaining about services and food available on the cruise.

11. MERCADO had a blood stain and scratch on his face while being interviewed by cruise security officers. MERCADO stated A.R. may have hit him causing the injury. MERCADO denied hitting or choking A.R.

12. MERCADO appeared heavily intoxicated during interaction with the cruise security officers and frequently slurred his speech and could not stand steadily.

13. Body cameras, worn by cruise security, captured cruise security's initial interactions with MERCADO and A.R., which I later reviewed.

14. A.R.'s injuries were captured on body camera, and pictures were taken by cruise security officers at the time of the reporting incident. Upon my review of the photos, they were consistent with what A.R. reported to cruise security. For example, one image of A.R.'s neck appeared to show bruising in the shape of a hand and fingers.

15. Upon arrival to Port Canaveral, Florida on February 25, 2026, at approximately 12:00 p.m., A.R. was transported to a local hospital by ambulance for further evaluation of injuries that the cruise medical team may not have been able to detect.

16. The FBI searched stateroom 10132, which is where this incident took place, and recovered two bed sheets with possible blood stains. The bed sheets were collected by the FBI.

17. An interview of medical staff, who examined A.R. after the incident, indicated injuries consistent with A.R.'s statements. Medical staff also stated A.R. had previous medical issues concerning her abdomen, but medical staff were unable to determine any further injuries that may have been caused to A.R. from being struck by MERCADO.

18. In an interview with the FBI, MERCADO stated he had been drinking alcoholic beverages leading to the altercation with A.R. Upon review of receipts from Royal Caribbean associated with MERCADO, MERCADO purchased approximately 19 alcoholic beverages from 11:15 a.m. to 3:38 p.m. on February 24, 2026. MERCADO stated he returned to stateroom 10132 and proceeded to vomit in

the bathroom. MERCADO claimed he got into a verbal altercation with A.R. but again denied striking or assaulting A.R.

19. MERCADO had an injury on his face, and he claimed the injury came from A.R. but did not recall how the injury was sustained.

20. A.R. was interviewed by the FBI at the Cape Canaveral Hospital in Cocoa Beach, Florida. A.R. stated that MERCADO had frequently verbally abused her and, on several occasions, had pushed or shoved A.R.

21. As to the February 24, 2026, incident, A.R. stated that when she returned to stateroom 10132, MERCADO was asleep, face down, on the bed and awoke when A.R. entered the room. A.R. noticed a "shot glass" in the room and could smell alcohol on MERCADO. A.R. and MERCADO began to argue about MERCADO's alcohol consumption, and MERCADO became aggressive towards A.R. During the verbal altercation, MERCADO told A.R., "many people fall off cruise balconies and did not survive." A.R. feared for her safety due to this statement because their room had a balcony.

22. The verbal altercation was briefly interrupted by a cruise cleaning staff member who had knocked on the door. MERCADO closed the door on the staff member and continued the verbal altercation.

23. A.R. then called her parents due to MERCADO's aggressive attitude. While A.R. was on the phone, MERCADO yelled obscenities at A.R.'s parents.

24. A.R. also attempted to contact cruise security officers multiple times, but MERCADO disconnected the phone call and threw the phone at A.R.

25. MERCADO tackled A.R. to the floor of the room and physically assaulted A.R. by pulling A.R.'s hair, striking A.R. in the abdomen, and striking A.R.'s head on the floor. MERCADO also bit A.R. on the chin and neck and drew blood from A.R.

26. MERCADO strangled A.R. with two hands around A.R.'s neck and told A.R., "nobody will help you." While being strangled, A.R. began to fear for their life, started losing the ability to breathe, and came close to losing consciousness.

27. A.R., in fear for her life, then struck MERCADO with a bottle of sunscreen. MERCADO released A.R. and went into the bathroom to vomit.

28. While MERCADO was in the bathroom, A.R. escaped to the hallway, where she was located by cruise cleaning staff and security officers were called.

29. A.R. stated MERCADO was significantly heavier and taller than A.R., and A.R. was unable to fend off an attack from MERCADO due to this difference. Additionally, A.R. had a previous history of 20 surgeries and a tumor, of which MERCADO was aware of and which could have been made worse due to MERCADO's assault.

30. A.R. suffered from contusions on the lower back, a head injury, a cut on the back of her right arm, abdomen bruises, and bruises on the neck, chin, and thighs.

## CONCLUSION

31. Based on the foregoing information, I respectfully submit that probable cause exists that MERCADO violated 18 U.S.C. § 113(a)(8) by assaulting A.R., his

spouse, by strangling, suffocating, or attempting to strangle or suffocate her, within the special maritime and territorial jurisdiction of the United States.

_____
Jacob Hamilton
Special Agent
Federal Bureau of Investigation

Affidavit submitted by reliable electronic means and attested to me as true and accurate via telephone or video conferencing consistent with Fed. R. Crim. P. 4.1 and 41(d)(3), this 26th day of February, 2026.

_____
HONORABLE LESLIE HOFFMAN PRICE
United States Magistrate Judge